**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

REGINA VARNER,

      Plaintiff,

vs.                                                    CASE NO. 3:09-cv-1026-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____/

## <u>ORDER AND OPINION</u>

This matter is before the Court on Plaintiff's Complaint (Doc. #1), which seeks review

of the final decision of the Commissioner of the Social Security Administration ("the

Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB").  Plaintiff

filed her Memorandum in Support of the Appeal of the Commissioner's Decision (Doc. #14),

and Defendant filed his Memorandum in Support of the Commissioner's Decision (Doc.

#15).  Both parties have consented to the exercise of jurisdiction by a magistrate judge, and

the case has been referred to the undersigned by an Order of Reference dated January 27,

2010 (Doc. #10).   The Commissioner has filed the transcript of the underlying

administrative record and proceedings (hereinafter referred to as "Tr." followed by the

appropriate page number).

The undersigned has reviewed the record and has given it due consideration in its

entirety, including arguments presented by the parties in their briefs and materials provided

in the transcript of the underlying proceedings.  Upon review of the record, the undersigned

found the issues raised by Plaintiff were fully briefed and determined oral argument would

not benefit the Court in making its determinations.  Accordingly, the instant matter has been decided on the written record.  For the reasons set out herein, the Commissioner's decision is **REVERSED and REMANDED**.

## I.  Procedural History

Plaintiff Regina Varner filed an application for DIB on October 4, 2006, alleging disability beginning July 1, 2006 (Tr. 81-86).  Plaintiff's application was initially denied on March 1, 2007 (Tr. 44-50), and upon reconsideration on June 14, 2007 (Tr. 51-57).  Plaintiff requested a hearing, which was held on August 12, 2008 before Administrative Law Judge Robert Droker ("the ALJ") (Tr. 25-43).  At the hearing, Plaintiff appeared and testified, as did vocational expert Donna Mancini ("the VE") (Tr. 25-43).  Following the hearing, the ALJ denied Plaintiff's application for DIB in a hearing decision dated November 4, 2008 (Tr. 10-24).  The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 1-5).  Subsequently, after exhausting her administrative remedies, Plaintiff filed the instant appeal (Doc. #1).

## II.  Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R.

§ 404.1520(a)(4)(i-v);[1] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  A plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

---

[1]All references made to 20 C.F.R. will be to the 2010 edition unless otherwise specified.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).   Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, a plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

### III.  Background Facts

Plaintiff was born on January 30, 1956; thus, at the time of the 2008 hearing, she was fifty-two years old (*see* Tr. 28).  Plaintiff graduated high school, has two years of college education, and past relevant work experience as a bookkeeper (Tr. 38).  *See* UNITED STATES DEP'T OF LABOR, *Dictionary of Occupational Titles* § 210.382-014 (4th Ed.

4

1991).  Plaintiff ceased working on July 1, 2006 due to pain, muscle weakness, fatigue, inability to concentrate, and frequent doctor visits (Tr. 30).

The ALJ found Plaintiff had the following severe impairments: muscle myopathy; hypothyroidism; anemia; and morbid obesity (Tr. 15).[2]  After considering the evidence of record and the testimony obtained at the hearing, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work; however, the ALJ limited Plaintiff to lifting a maximum of ten (10) pounds (Tr. 20).[3]  The ALJ also found Plaintiff should avoid extreme temperatures, unusual stress, moving machinery, and "must avoid pushing/pulling of ram [sic] controls" (Tr. 20).[4]   Although the ALJ found she could occasionally bend, crouch, kneel, squat, and crawl, he noted Plaintiff must be able to shift positions at will from sitting, standing, or walking (Tr. 20).

When considering Plaintiff's impairments at step three of the sequential evaluation process, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P. (Tr. 19).  At step four, the ALJ found Plaintiff unable to perform her past

---

[2]The undersigned would note that the ALJ did not find Plaintiff's fibromyalgia to be a severe impairment.  As will be discussed more comprehensively below, muscle myopathy and fibromyalgia are not the same aliment.  Plaintiff also suffers from depression, which the ALJ found was not severe. Plaintiff, however, did not challenge the ALJ's finding that Plaintiff's mental impairment did "not cause more than minimal limitation" in her ability to work (*see* Tr. 18; *see also* Doc. #14).

[3]Light work involves lifting no more than twenty (20) pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds.  20 C.F.R. § 404.1567(b).  A job in the light work category may still require a good deal of walking or standing, or it may involve sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*  To be considered capable of performing a full or wide range of light work, a plaintiff must have the ability to do substantially all of the aforementioned activities. *Id.*

[4]In the hypothetical question posed to the VE, the ALJ stated Plaintiff would need to avoid the pushing and pulling of "arm" controls (Tr. 39).

relevant work as a bookkeeper (Tr. 23); however, after accepting the VE's testimony, the ALJ found (at step five) that Plaintiff was capable of performing other occupations in the regional and national economy, such as a file clerk, general clerk, administrative clerk, inventory control clerk, and payroll clerk (Tr. 24).  *See Dictionary of Occupational Titles, supra*, §§ 206.387-034, 209.562-010, 219.362-010, 214.362-026, 215.382-014.

In her Disability Report-Adult, dated October 31, 2006, Plaintiff claimed she was unable to work due to, *inter alia*, muscle weakness, muscle pain, mobility problems, and falling (Tr. 116).  Additionally, Plaintiff claimed she could not hold a pencil for long periods of time (Tr. 116).  In her Disability Report-Appeal, dated April 23, 2007, Plaintiff claimed to have experienced changes in her condition since the prior report, *supra* (Tr. 144). Specifically, Plaintiff noted an increase in pain, which she stated contributed to an increase in her level of fatigue (Tr. 144).  Plaintiff also stated that, since November 2006, she experienced new symptoms consisting of dizziness, heart racing, blurred vision, and speech problems (Tr. 144).  Plaintiff noted no changes of symptoms in her Disability Report-Appeal, dated August 9, 2007 (Tr. 160).

Doctors attempted numerous forms of treatment for Plaintiff's complaints of pain. Specifically, Plaintiff was prescribed medications including Xanax (Tr. 192), Lexapro (Tr. 192), Cymbalta (Tr. 202), Lyrica (Tr. 202), and monthly B-12 injections (Tr. 215).  Plaintiff maintains that these treatment modalities were not particularly successful, and that at least one drug caused her to have negative side effects.  Specifically, while Cymbalta eased her pain, she stopped taking it because it exacerbated her depression (Tr. 432).  As a result of her reporting increased symptoms of depression, Plaintiff's pain management specialist, Hemant Shah, M.D. ("Dr. Shah"), discontinued Cymbalta and prescribed Plaintiff Lyrica

6

instead (Tr. 432).  Lyrica, however, did not appear to be as effective as Cymbalta, as one week later it was noted that Plaintiff continued to suffer "significant" pain (Tr. 202).

Plaintiff has been treated by neurologist, Richard Boehme, M.D., Ph.D. ("Dr. Boehme") (*see* Tr. 204-22).  On June 19, 2006, Dr. Boehme reported that Plaintiff had diminished motor strength and absent reflexes (Tr. 215).  On June 27, 2006, Dr. Boehme noted Plaintiff had abnormal electromyography ("EMG")[5] results of the left upper and lower extremities (Tr. 214).  Plaintiff underwent a skeletal muscle biopsy on August 23, 2006—the results of which indicated mixed myopathic and neurogenic changes (Tr. 227, 229).  On October 4, 2006, Dr. Boehme noted Plaintiff's tenderness upon squeezing in the upper arms, back, and legs, with possible "give-way weakness" in the deltoids bilaterally (Tr. 222).  Dr. Boehme stated he wanted to "aggressively treat her pain" and that he thought "aggressive pain management should be employed" (Tr. 222-23).  On October 17, 2006, a nurse practitioner prescribed Plaintiff a wheelchair for long distance locomotion (Tr. 188; *see also* Tr. 35).  On October 30, 2006, Dr. Boehme described Plaintiff as "totally disabled" (Tr. 204).

On January 29, 2007, Cynthia Bodkin, M.D. ("Dr. Bodkin") noted that Plaintiff experienced both good and bad days (Tr. 353).  Plaintiff reported that she often suffers from general muscle pain and weakness, confusion, fatigue, and a tingling sensation in her feet and hands (Tr. 353).  Plaintiff stated that she was not engaging in any physical activity (Tr. 353).  Dr. Bodkin's impression included, *inter alia*, that given Plaintiff's description of

---

[5]Electromyography is a test performed with thin needle electrodes that checks the health of the muscles and the nerves that control the muscles. MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/003929.htm (Mar. 23, 2011).  It should be noted that the judiciary does not exercise responsibility over the content or current viability of the URL provided.

pain and fatigue she wondered if Plaintiff "may have fibromyalgia" (Tr. 354).  On March 26, 2007, Dr. Bodkin diagnosed Plaintiff with myalgias, or muscle pain, and stated "I feel that this may be a version of chronic pain syndrome like fibromyalgia" (Tr. 323).

On February 5, 2007, Plaintiff was examined by state agency examining physician, Lynn Harper-Nimock, M.D. ("Dr. Harper-Nimock").  She diagnosed Plaintiff with, *inter alia*, myopathy, chronic fatigue, cognitive impairment, and hypothyroidism (Tr. 245).  Dr. Harper-Nimock found Plaintiff to have "marked" limitations (Tr. 245).  Dr. Harper-Nimock noted Plaintiff stated she was experiencing increased episodes of falling and fatigue (Tr. 242).

On February 22, 2007, non-examining physician, Donald Morford, M.D. ("Dr. Morford"), completed a Physical Residual Functional Capacity Assessment (Tr. 248-55).  After reviewing Plaintiff's medical records, Dr. Morford reported that, in his opinion, Plaintiff is capable of at least two (2) hours of standing and/or walking per eight-hour workday, and six (6) hours of sitting in an eight-hour workday (Tr. 249).

On April 3, 2007, Gudni Thorsteinsson, M.D. ("Dr. Thorsteinsson") noted that Plaintiff "has a significant problem with fatigue" (Tr. 320).

On June 11, 2007, non-examining physician, Audrey Goodpasture, M.D. ("Dr. Goodpasture"), performed a Physical Residual Functional Capacity Assessment (Tr. 424-31).  After reviewing Plaintiff's medical records, Dr. Goodpasture found Plaintiff to be able to stand and/or walking for at least two (2) hours in an eight-hour period, and that she could sit for about six (6) hours in an eight-hour workday (Tr. 425).

On December 17, 2007, Mayo Clinic rheumatologist, Scott T. Persellin, M.D. ("Dr. Persellin"), diagnosed Plaintiff with "longstanding fibromyalgia" (Tr. 297).  It should be noted that this is the first affirmative diagnosis of fibromyalgia contained in the record.  Thereafter,

8

from February 5, 2008 through July 23, 2008, Plaintiff treated at the Mayo Clinic (Tr. 458-546).[6]

At the August 12, 2008 hearing, Plaintiff testified that she had worked as a bookkeeper since she was eighteen (18) years old, but that she resigned (rather than be fired) in July 2006 due to her medical problems (Tr. 30). Plaintiff stated she had pain in her entire body, most prominently in her neck, shoulders, and lower back (Tr. 34). Plaintiff stated this pain prevented her from sitting for more than one (1) hour at a time and from standing for more than five (5) minutes at a time (Tr. 35). Plaintiff testified that she is able to perform various household tasks, such as limited laundry, some cooking, and loading the dishwasher (Tr. 21); however, her husband does the more strenuous chores (Tr. 30-31, 37). In addition, Plaintiff testified that there are days in which her pain and fatigue are so bad that she must lie in bed all day and cannot do anything (Tr. 37).

Following Plaintiff's testimony, the ALJ asked the VE what types of jobs Plaintiff could perform if she were limited to light work with limitations, including: (1) the option to stand and sit at will; (2) a maximum lifting capacity of ten (10) pound; (3) avoidance of ladders, heavy machinery, unusual stress, and arm controls; and (4) limited crouching, bending, and kneeling (Tr. 39). Using said limitations, the VE testified that, due to the stress involved, Plaintiff could not perform her past job as a bookkeeper, but that she could perform other unskilled sedentary jobs, including a file clerk, general clerk, administrative

---

[6]It appears that after being diagnosed with fibromyalgia and undergoing treatment at the Mayo Clinic, Plaintiff may be doing better as, on July 23, 2008, she reported to a psychiatric nurse practitioner that she was "walking with her neighbor in the morning and with her husband in the evening" (*see* Tr. 459; *see also* Tr. 458-544).

clerk, inventory control clerk, and payroll clerk (Tr. 41).  *See Dictionary of Occupational Titles*, *supra*, §§ 206.387-034, 209.562-010, 219.362-010, 214.362-026, 215.382-014.

Based on the record evidence and the testimony obtained at the hearing, the ALJ found Plaintiff was not disabled in a decision dated September 4, 2008 (Tr. 23-24).

## IV.  Analysis

### A.      Plaintiff's Credibility

Plaintiff first argues that the ALJ improperly evaluated her credibility regarding her subjective complaints of pain (Doc. #14 at 13).   For the reasons stated herein, the undersigned agrees.

An ALJ must consider all of a plaintiff's statements about his or her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1520.  In so doing, the ALJ must apply the Eleventh Circuit's three-part pain standard, which requires: (1) evidence of an underlying medical condition and either; (2) objective medical evidence substantiating the severity of the pain asserted or; (3) the objective medical condition is so severe that it can be reasonably expected to give rise to the pain asserted.  *Foote*, 67 F.3d at 1560.

Where an ALJ decides not to credit a plaintiff's testimony about an asserted condition, the ALJ must articulate specific and adequate reasons based on substantial evidence for so doing, or the record must be obvious as to the credibility finding.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

In addition, when assessing a fibromyalgia case, the ALJ's decision to deny disability benefits cannot turn on a finding that there was a lack of corroborative objective evidence to support a treating physician's diagnosis of impairment or his or her opinion as to the severity of the impairment. *Moore v. Barnhart*, 405 F.3d 1208, 1211-12 (11th Cir. 2005). This is because fibromyalgia is a disorder that often lacks medical or laboratory signs and is mostly diagnosed on an individual's described symptoms. *Id.* at 1211-12; *see also Somogy v. Comm'r of Soc. Sec.*, 366 Fed. Appx. 56, at *64 (11th Cir. Jan. 1, 2007) (noting that "a claimant's subjective complaints of pain [in fibromyalgia cases] are often the only means of determining the severity of a patients condition *and the functional limitations* caused thereby") (*emphasis added*);[7] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (stating that "fibromyalgia patients present no objectively alarming signs"); *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir. 1996) (noting that "[t]here are no laboratory tests for the presence *or severity* of fibromyalgia") (*emphasis added*). The lack of objective clinical findings, at least in the case of fibromyalgia, is alone insufficient to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-08 (2nd Cir. 2003) (holding that because fibromyalgia is a "disease that eludes [objective] measurement," the ALJ improperly discredited treating physician's disability determination based upon lack of objective evidence).

Here, Plaintiff testified that she experiences pain throughout her entire body, but primarily in her neck, shoulders, and lower back, which, in combination with fatigue and a

---

[7]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

lack of ability to concentrate, prevents her from working (Tr. 34).   The ALJ discredited Plaintiff's testimony by noting, *inter alia*, her statements regarding her activities of daily living (Tr. 8-9).   Such statements included that she did limited laundry, loaded the dishwasher, and worked on the computer in short intervals (Tr. 21, 31).   Plaintiff also testified that she infrequently went grocery shopping and usually drove once a month to her medical appointments (Tr. 31-36).   The ALJ's heavy reliance on these activities to discredit Plaintiff's testimony regarding her pain was inappropriate, as this Circuit has recognized that "participation in everyday activities of short duration, such as housework or fishing, [should not disqualify] a claimant from disability."  *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).   In addition, the ALJ failed to discuss Plaintiff's testimony with respect to her having bad days, during which she is unable to do anything but lie in bed (*see* Tr. 37).

The ALJ also cites Plaintiff's "generally unpersuasive appearance and demeanor" at the hearing (Tr. 22).   While the ALJ took care to specify that his reliance on her "unpersuasive appearance" at the hearing was only one factor among many that he considered in finding Plaintiff's testimony not credible, "sit and squirm" jurisprudence is not recognized in this Circuit.   *McRoberts v. Bowen*, 841 F.2d 1077, 1081 (11th Cir. 1988). Moreover, the hearing lasted only twenty (20) minutes, and Plaintiff testified that she has the ability to sit for up to one (1) hour at a time (Tr. 35).

The ALJ also failed to consider Plaintiff's testimony that, despite being able to perform limited chores around the home, she can only do them for about fifteen (15) minutes at a time before needing to rest (Tr. 36-37).   Plaintiff also testified that there are some days in which she is unable to do any chores whatsoever due to pain and fatigue (Tr. 37).   While Plaintiff testified that within the past twelve (12) months she took a long trip to

Tennessee to visit her ill father (Tr. 33), she stated that this trip took twelve (12) hours to complete—four (4) hours longer than normal due to the number of frequent stops she had to make because of her symptoms (Tr. 33).

The undersigned would note that Plaintiff's testimony regarding her subjective complaints of pain, weakness, fatigue, and confusion is bolstered by the medical record. What Plaintiff reports are symptoms of fibromyalgia. *See Somogy*, 366 Fed. Appx. at *64. Specifically, the record reveals that Plaintiff consistently reported symptoms of fibromyalgia, including, *inter alia*, chronic muscle pain, severe fatigue, pain upon palpation of tender points, numbness and tingling in her feet and hands, confusion, and depression (both before and after diagnosis) and that Plaintiff's physicians noted and credited these complaints.  Other than a lack of objective medical findings, it does not appear that Plaintiff's doctors disbelieved her complaints.  *See, e.g., Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (ALJ's finding that claimant's fatigue did not significantly affect his RFC was not supported by substantial evidence where "examining physicians' reports, over a period of more than 18 months, consistently noted (and credited) claimant's complaints of persistent fatigue" and the record contained no "meaningful evidence to support a finding that claimant did not suffer from a significant level of fatigue on a regular basis").  As previously noted, "the nature of fibromyalgia itself renders . . . over-emphasis upon objective findings inappropriate."  *Rogers*, 486 F.3d at 248; *see also Green-Younger*, 335 F.3d at 108-09 (lack of physical abnormalities did not undercut claimant's complaints of pain since physical examinations of fibromyalgia patients "will usually yield normal results").  In this instance, the credibility of Plaintiff's complaints of disabling pain are bolstered by evidence that she made numerous visits to her doctors over the course of several years,

underwent numerous diagnostic tests, was prescribed numerous medications, and was referred for "aggressive" physical therapy.  Multiple doctors noted the possible presence of fibromyalgia, which was eventually affirmatively diagnosed by a rheumatologist at the Mayo Clinic (*see* Tr. 309, 320, 322, 325, 354; *see also* Tr. 18).  The ALJ states that Plaintiff's testimony is further discredited by medical records that show her "treatment has been essentially routine and/or conservative in nature" (Tr. 21).  The ALJ, however, does not describe what type(s) of treatment modalities he would prefer to see.  "[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Sarchet*, 78 F.3d at 306.  As there is no cure for fibromyalgia, treatment typically consists of both medication and self care, with the emphasis being on minimizing symptoms.[8] Plaintiff has been prescribed numerous medications since 2006, including Xanax (Tr. 192), Lexapro (Tr. 192), Cymbalta (Tr. 202), Lyrica (Tr. 202), and monthly B-12 injections (Tr. 215; *see also* Tr. 189, 205).  In addition, Plaintiff's treating physician, Dr. Boehme, stated he wanted to "aggressively treat her pain" and that he thought "aggressive pain management should be employed" (Tr. 222-23).

The ALJ states that medication has been effective in treating her symptoms, "when she takes it as prescribed," and that the side effects from her medications have been "mild" (Tr. 21).  Although Plaintiff did cease taking Cymbalta on her own accord, the ALJ failed to note that a pain specialist, Dr. Shah, affirmatively discontinued her Cymbalta after Plaintiff reported that she stopped taking it because of increased symptoms of depression

---

[8]Mayo Clinic,
http://www.mayoclinic.com/health/fibromyalgia/DS00079/DSECTION=treatments-and-drugs (Mar. 23, 2011).  The judiciary does not exercise responsibility over the content or current viability of the URL provided.

(Tr. 432; *see also* Tr. 202).  It is unclear why the ALJ believes increased depression to be a mild side effect when Plaintiff suffers from depression, and when Dr. Shah found this side effect sufficient enough to discontinue the drug and prescribe Lyrica instead (Tr. 432). Unfortunately, Lyrica did not appear to be as effective as Cymbalta, as one week later it was noted that Plaintiff continued to suffer "significant" pain (Tr. 202).

The ALJ pointed out that, on September 13, 2006, Dr. Berger noted Plaintiff's disability seemed "a little exaggerated" given her relative mild degree of muscle weakness (Tr. 228).  Dr. Berger, however, stated that he believed Plaintiff did suffer from a "true disease," and it should be noted that at this point in time Plaintiff had not yet been diagnosed with fibromyalgia (*see* Tr. 228; *see also* Tr. 297).

It should also be noted that, while the ALJ acknowledged in the body of his opinion that Plaintiff had been diagnosed with fibromyalgia, he did not list fibromyalgia as one of Plaintiff's "severe" impairments (*see* Tr. 3-6).  In this circuit, an impairment is not severe if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  The fact the ALJ did not find Plaintiff's fibromyalgia to be a severe impairment raises questions as to whether the ALJ properly considered this condition when rendering his decision.  Muscle myopathy and fibromyalgia are two distinct conditions.  *See* PUBMED HEALTH, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001463/ (Mar. 24, 2011) ("Fibromyalgia is a common syndrome in which people experience long-term, body-wide pain and tender points in joints, muscles, tendons, and other soft tissues.  Fibromyalgia has also been linked to fatigue, sleep problems, headaches, depression, anxiety, and other symptoms");

*compare,* Courtney A. Bethel, M.D., M.P.H., *Myopathies*, EMEDICINE (Dec. 30, 2009), http://emedicine.medscape.com/article/759487-overview (last visited Mar. 24, 2011) (describing the multitude of myopathies, with varying etiologies that do not include fibromyalgia, such as metabolic, inflammatory, endocrine, congenital, and toxic causes).[9] Moreover, common symptoms of myopathies include muscle weakness and impaired function, but rarely muscle pain and tenderness, which is a hallmark symptom of fibromyalgia.  *Id.*

At a minimum, the fact the ALJ did not list Plaintiff's fibromyalgia as a severe impairment, raises questions as to whether the ALJ considered fibromyalgia in combination with Plaintiff's other impairments.  *See* 20 C.F.R. § 404.1520.  In determining whether an individual's physical or mental impairments are of sufficient severity to establish disability under the Regulations, the ALJ is required to consider all of the individual's impairments regardless of whether each impairment on its own is found to be severe.  20 C.F.R. § 404.1520.  The Eleventh Circuit has held  that where "a claimant has alleged a multitude of impairments, a claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling."  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

Based on the foregoing, the undersigned finds the reasons cited by the ALJ for discrediting Plaintiff's subjective complaints of pain, fatigue, and lack of concentration are not supported by substantial evidence of record.

---

[9]The judiciary does not exercise responsibility over the content or current viability of the URL provided.

**B.    Physician Statements**

Plaintiff next argues that the ALJ did not give proper weight to the opinions of Plaintiff's treating physician, Dr. Boehme, and the state agency examining physician, Dr. Harper-Nimock, when determining Plaintiff's RFC (Doc. #14 at 21-26).  For the reasons stated herein, the undersigned agrees.

The RFC is an assessment based on all relevant evidence of a plaintiff's remaining ability to do work despite his or her impairments.  20 C.F.R. § 404.1545; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the physicians' evaluations of a plaintiff's condition and the medical consequences thereof.  *Id.*  In evaluating a plaintiff's RFC, the ALJ must consider all of a plaintiff's impairments, including subjective symptoms such as pain.  20 C.F.R. § 404.1529.

In determining a plaintiff's RFC, the opinion, diagnosis, and medical evidence of a treating physician are entitled to more weight than the opinion of a non-examining source.  20 C.F.R. § 404.1527(d)(2).  The Regulations further instruct ALJs with respect to properly weighing the medical opinions of treating physicians.  The Regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from [a plaintiff's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s)," a treating

17

physician's medical opinion is due to be afforded great weight so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Important to the determination of whether there is a "detailed, longitudinal picture" of a claimant's impairments is the length of the treatment relationship,[10] the frequency of examination, the knowledge of the treating source as shown by the nature and extent of the treatment relationship, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician. 20 C.F.R. § 404.1527(d)(2)-(5).

Additionally, it is well established in the Eleventh Circuit that, generally, substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is "good cause" to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion: (1) is not bolstered by the evidence; (2) is contrary to the evidence; or (3) is inconsistent with the treating physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those

---

[10]Generally, the longer a treating source has treated a claimant and the more times a claimant has been seen by a treating source, the more weight that should be given to that source's medical opinion. 20 C.F.R. § 404.1527(d)(2)(i).

reasons are supported by substantial evidence," a reviewing court cannot "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 300 Fed. Appx. 741 at *743 (11th Cir. 2008).

Here, the ALJ's RFC determination is primarily based on the opinions of two non-examining physicians, Dr. Morford (Tr. 248) and Dr. Goodpasture (Tr. 424).  One of the ALJ's stated reasons for giving these doctors' opinions more weight than the opinions of Dr. Boehme and Dr. Harper-Nimock is because "there exist[s] a number of other reasons to reach similar conclusions" (Tr. 22).  In addition to this statement being cryptic, the ALJ fails to specify what "other reasons" to which he refers.  Moreover, Dr. Morford rendered his opinion without the benefit of knowing Plaintiff suffers from fibromyalgia, as she had not yet been affirmatively diagnosed with this syndrome.  Although Dr. Goodpasture noted that "multiple examiners have opined that she [Plaintiff] has some kind of disease, possibly a mild myopathy vs fibromyalgia," he states that Plaintiff's muscle weakness and pain are "undiagnosed" (Tr. 429).  As neither of these doctors knew, or acknowledged, that Plaintiff suffers from fibromyalgia, the undersigned finds the ALJ's reliance or their opinions as to Plaintiff's functional limitations to be inappropriate under the facts presented.

With respect to Plaintiff's treating physician, Dr. Boehme, the ALJ stated his opinion is "not supported by objective medical findings and it is inconsistent with the evidence of record when considered in its entirety" (Tr. 22).  Dr. Boehme's reports, however, list multiple objective findings that support his opinion (*see* Tr. 204-22).  To illustrate, Plaintiff had diminished motor strength and absent reflexes (Tr. 215), an abnormal EMG (Tr. 214), proximal muscle weakness (Tr. 205), an antalgic gait (Tr. 205), tenderness to squeezing in the upper arms, back, and legs, with possible "give-way weakness" in the deltoids

bilaterally (Tr. 222), and weakness in most muscle groups (Tr. 204). These symptoms are consistent with fibromyalgia. Moreover, as previously noted, "the nature of fibromyalgia itself renders . . . over-emphasis upon objective findings inappropriate." *Rogers*, 486 F.3d at 248; *see also Green-Younger*, 335 F.3d at 108-09 (lack of physical abnormalities did not undercut claimant's complaints of pain since physical examinations of fibromyalgia patients "will usually yield normal results").

The ALJ stated Dr. Harper-Nimock's "opinion that the claimant has marked limitations is not totally supported by the evidence of record when considered in its entirety, including the claimant's testimony" (Tr. 23). The ALJ goes no further in explaining his reason(s) for making this determination. Presumably, the ALJ is referring to a lack of objective evidence, and Plaintiff's testimony that she engages in various activities of daily living. Said determination, however, as noted throughout this Order and Opinion, is not supported by substantial evidence. To reiterate, over-reliance on objective testing is inappropriate in a fibromyalgia case and Plaintiff testified that she cannot sit for more than one (1) hour at a time (Tr. 35), requires a wheelchair for long distances (Tr. 35), and on bad days cannot even get out of bed (Tr. 37).

In addition, the ALJ stated that he gave the opinion evidence of Drs. Boehme and Harper-Nimock "appropriate weight" (Tr. 10-11). An ALJ, however, must state with particularity the weight given to the opinion of medical opinion evidence. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (finding the ALJ is "required to state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor"). The word "appropriate" is not particular, as it means suitable or fitting.

Webster's II New College Dictionary 56 (Marion Severynse *et al.* eds., Houghton Mifflin Co. 1999).

Based on the foregoing, the undersigned finds the ALJ's reasons for giving the opinions of Drs. Boehme and Harper-Nimock less than substantial weight are insufficient.

The Court would point out that from the date of Plaintiff's alleged disability (July 1, 2006) to the date of the last treatment notation from the Mayo Clinic (July 23, 2008), a time period of slightly over two (2) years had elapsed.  The evidence of record regarding this time period indicates that Plaintiff's treating physician, Dr. Boehme, found Plaintiff was "totally disabled" (Tr. 204), but toward the later part of this time period, Plaintiff reported that she was taking daily walks with her neighbor and husband (Tr. 459).

In order for a claimant to be found disabled, he or she must show they were under a disability for at least twelve (12) consecutive months.  20 C.F.R. § 404.1505(a).  The Social Security Administration ("SSA") recognizes, however, that there are instances where a claimant, before adjudication of his or her claim, may have met the durational requirement and then subsequently improved, such that they no longer meet the definition of disability.  The SSA's PROGRAM OPERATIONS MANUAL SYSTEM ("POMS") provides as follows:

> When evidence establishes that the claimant was unable to engage in SGA [substantial gainful activity] for a continuous period of 12 months, but by the time the determination is made, the claimant is no longer disabled, a closed period may be indicated, if all other requirements are met.

§ DI 25510.001 (Jan. 30, 1997).

Under the facts presented, the undersigned would suggest that, on remand, Plaintiff should at least be considered for a closed period of disability.

### V.   Conclusion

For the foregoing reasons, the decision of the Commissioner is hereby **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner may hold other proceedings as he deems necessary, but in any event shall re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law, re-weigh the opinion evidence, and give the appropriate weight to the opinion of state agency examining physician, Dr. Harper-Nimock (*see, e.g.*, Tr. 245), and Plaintiff's treating physician, Dr. Boehme (*see, e.g.*, Tr. 204).

Plaintiff is cautioned, however, that this opinion does not suggest she is entitled to disability benefits.   Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether she is disabled within the meaning of the Social Security Act.   *Phillips*, 357 F.3d at 1244.

### VI. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Opinion and, thereafter, to close the file.   The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within thirty (30) days of the Commissioner's final decision to award benefits.   *See* Fed. R. Civ. P. 54(d)(2)(b); M.D. Fla. Loc. R. 4.18(a); *Bergen v. Comm'r of Soc. Security*, 454 F.3d 1273, 1278 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of March, 2011.

Copies to all counsel of record

THOMAS E. MORRIS
United States Magistrate Judge

23